The final case on the call this morning is number 122556, American Family Insurance v. Krop, agenda number 15. Counsel, you may proceed. Good morning, Your Honors. My name is Keith Swofford, and I represent Andy Varga, who is an American Family Sales agent who sold a homeowner's policy to the third-party plaintiffs, Mr. and Mrs. Krop. The Krops allege that Mr. Varga negligently failed to procure the coverage that they requested, and that's the basis for their lawsuit, and the issue in this case is when the statute of limitations began on their claim. The trial court held the suit was untimely, and the appellate court reversed. The trial court applied a long-standing traditional rule that when a cause of action is found unbreached, when a tort is found, when a tort, in this case the negligent procurement of the insurance policy, is found on a breach of contract, that the cause of action accrues when the contract is breached, and that would have been in March of 2012 when the policy was delivered to the Krops, and they did not sue for the breach until September of 2015, which was more than two years, which was the length of the statute of limitations. The reason for this traditional rule, that is, that the cause of action accrues when the contract is breached, is that the parties have an obligation to know what's in their contract, that otherwise the length of the statute of limitations is indeterminate and can go on and on and on until something occurs. The parties have an obligation to mitigate their damages. As a practical matter, the effect of the appellate court opinion here is that you never knew when the cause of action was going to accrue. The appellate court here, the Krops alleged that they didn't discover their cause of action until they were sued in an underlying case, and they found they didn't have coverage. The appellate court here, however, totally put aside the discovery rule at all and said the cause of action didn't accrue until they were damaged. Under the appellate court's opinion, therefore, the insurer can delay bringing suit even though he may have known from day one that he got a policy that was inadequate and defective. So the appellate court has, in effect, extended the statute of limitations indefinitely. Somebody can buy a policy and it could be inadequate or whatever. Somebody can enter into a contract that could be defective. He can just stand mute and wait forever until the unfortunate event happens before he sues. And that is just contrary to all prior cases. Before I go any further, the threshold issue, and this should be a matter of policy, that the court has to address is whether or not a party has a duty to know what's in his contract or to look at his contract or look at his policy and see what's in it. I mean, I know it's inconvenient to look at your insurance policy and to read your insurance policy. But in effect, the appellate court resolved and insured from any obligation to look at his policy whatsoever. And it just seems to me... Would this deficiency in this case have been noticeable on the face of the policy? It would have been, yes. This policy... The crops asked for a policy from American Family that provided the same coverage as their prior traveler's policy. And if they looked at their policy, they would have seen that this new policy provided coverage for bodily injury and property damage. And their prior traveler's policy provided coverage for personal injury, property damage, and... Did it have libel and slander in it? Pardon? Did it have libel and slander in it? Specifically... I'm going to read from the policy, if you don't mind. It provided coverage for bodily injury, personal injury, and property damage. Bodily injury, personal injury, and property damage. The American Family did not provide coverage for personal injury. Personal injury is defined as liability for defamation and invasion of privacy. And that's what the American Family policy on its face did not provide coverage for. All they had to do was read 19 pages. Okay, I should say only 19 pages of the traveler's policy. 16 pages of the American Family policy. But the liability coverage is here, clearly, in this one section of the traveler's policy. And in the American Family, there's an index, the whole policy. And it says... Right here... Liability coverage is page 9. And it's on page 9. It says coverage is... It says bodily injury and property damage. I mean, it's not... It's inconvenient to read these policies, but they're not written in the foreign language. They're not written in legalese. And... In effect, the appellate court really dissolved and insured of any obligation to read the policy. Because it just... It made a cruel cause of action triggered by when the injury occurs, the damages occur. The damages occur being a denial of coverage, which this case happened three years after the policy was issued. It could have happened ten years after the policy was initially issued. The crops have renewed this policy in 2013, 2014, 2015. I mean, I don't know if they've continued to renew it now or, you know, up to date or not. But they can renew it forever. And it just depends on, you know, when they're damaged. Is there anything specific about the legislative provision in 13-214.4 that would lead us to conclude whether or not the discovery rule should apply or shouldn't apply? Well, you know, I don't... I don't... I'm not arguing that the discovery rule should never be applied. There are circumstances in which the discovery rule can be applied. I mean, if they didn't get... If they weren't notified for some reason of a change in coverage or an exclusion or if the policy was so complicated it was misleading, which they didn't allege. If you go to their third-party complaint, I mean, they don't allege that, oh, we read the policy and we were confused and we didn't understand it. They allege that the travelers' policy said what I finally read rather than sell me over my words and the American family policy said this other thing because it's just as clear as can be. I mean, they take the position. They never said we read it and didn't understand it. They're taking the position that it's too difficult and it's too inconvenient to read the policy. There could be a situation like in that Scottsdale Lakeside case where perhaps it was just too confusing and discovery might apply. We've never taken the position that discovery can't apply. It just doesn't apply in this case. The appellate court took the position that cause of action doesn't accrue until there's damages and just threw discovery right out the window. So it's kind of a... Does there need to be additional fact-finding on when the crops knew or should have known? There was no fact-finding at all. That was another problem with the appellate court opinion. They merely, the crops went to the appellate court urging the discovery rule, saying that the policy was... How can we be expected to understand and be able to predict? I don't want to put words in their mouth. They can go on and explain it, but I'm just stating their position. How can we be expected to understand this? They're presenting this as an issue of fact and the appellate court reverses and doesn't even remand to give us a chance to engage in fact-finding. I mean, that was just... We filed a petition in re-hearing on that point that says, well, at the very least there's a question of factor because that's what the discovery rule presents. But, you know, that's another problem with the appellate court opinion, although there are lots of problems with the appellate court opinion. I have less problem with what the crops were arguing to begin with. I just feel that they didn't plead discovery adequately in this case, and that's what the trial court held. I don't know. The appellate court just cut through and said that they didn't even look at that. You just look at when the injury, when the damage has occurred to the crop, and that triggered the statute of limitations. They didn't even look at the duty of whether the insured had a duty to know the contents of the policy or anything. Could you respond? The first piece that you said, that the court was really looking at when the cause of action accrues. Right. Why is that not the appropriate analysis? Why is that not the appropriate analysis? Isn't that what you're arguing? That's what the appellate court did, and you're saying that's not appropriate. Why is that not the appropriate analysis? Because the insured gets the policy, and he should have some duty to look at the policy. If he didn't have any duty, if the court wants, I mean, that's why I say the federal issue. Mr. Swofford, so the breach, as you say, the fact they received this policy, they did not have the language they requested, that's when they were injured, and not, you're saying, when there was a denial of coverage. Is that what you're saying? That's what I'm saying. Why is that true? Why is it not when they're denied coverage? Because when that's traditionally, you get a contract, and it's not what you want. It's a breach of the contract, and you've been injured right then. I mean, it's just the traditional rule. And to allow it to go on and on and on, you're not, you know, the damages increase and increase and increase, not in this case. But sometimes, you know, they're paying a lesser premium for what they get for years and years and years. It's just, you know, in effect, stating it's a matter of policy, they had no obligation to look at their policy, they had no duty to look at the policy, they had no duty to look at the contents of their policy. I'm not putting words in your mouth. I'm saying that that's kind of the effect of that, though. I mean, there's certain things, you know, there's, we've never not said, you know, discovery is, we've never said that discovery rule does not, I don't think discovery rule applies here, but we've never said that discovery rule should never apply to delay the statute of limitations in an appropriate case. We've never done that. In this case, the insurers ask for the same coverage as travelers. Does Marga have a duty then to procure that insurance? And if he doesn't, does he have a duty to tell the client that the coverage is different? I'm sorry, does he? Does he have a duty to tell the client? Well, he has, under the law, he has a duty. I mean, assuming, I'm assuming that the facts are true as alleged, that this all happened, yeah, he has negligence liability, if that's what your question is. I'm not sure I understand your question. Yes, he has a duty. The crops, I guess, that he's asked for insurance, the same as travelers, correct? Right. If they ask for the same insurance as travelers, and he failed to do it, he could be liable in negligence. If he's sued within two years, yes. There's such a cause of action for negligent procurement of insurance of an insurance agent. And that's what this is, right? That's what they're alleging, and there's such a cause of action. So this is a negligence action? Yes. Not a contract action? It's not a breach action? That's right. So it's a negligence? Toward actions arising out of contract, I mean, these are Supreme Court cases we're relying on, as far as when the statute of any, I mean, toward action arising out of breach of contract, which this is, normally approves or traditionally approves at the time the contract is breached. It didn't necessarily have to approve. I'm trying to think of an example at the time that the contract, at the time the policy came into their hands. But, I mean, in this case it did, because they didn't get what they bargained for. Mr. Swofford, you don't agree that Varga was a fiduciary. You said their cause of action may, under the right circumstances, have been a cause of action for negligent procurement of insurance. But you're not agreeing with the appellate court, are you, that Varga was a fiduciary? No, I'm not agreeing it's a fiduciary. No, not at all. No, the appellate court's problem with that fiduciary was that they, that was the appellate court's way of getting around limitations at all. No, I mean, they're taking the, by imposing the, you know, this gets on, by imposing, they're taking the Black case, which kind of treated, if you treat the broker as a fiduciary, because it's all changed by that statute, but if you treat the broker as a fiduciary and try to treat him like a lawyer, then you get into the fact, then you get away from this accrual based on breach of contract. You get into, if you treat him like an attorney, fiduciary, then you can rely on your attorney, you can rely on your broker, you can rely on an attorney and the damage doesn't really occur until, or the malpractice doesn't really occur until the brokers let you down, the attorneys let you down, you see what I'm following? That was this Black, the theory of the Black case, which is siding with the briefs. So, that's sort of the direction that the appellate court went. It relied on Pearlman, which didn't really say that, because Pearlman even recognized that if the insured knew all along that the policy was deficient, contributory negligence could wipe out its recovery. The appellate court just really, by wiping out any inquiry as to whether the crops knew or should have known that the policy was defective, it just, by not even getting into the discovery issues, it just really went too far. Excuse me. But I would think that the crops presented the issue as a discovery case and it should be decided as a discovery case. My client was not a five-use theory. We didn't even get to talk about that, but my time is running out. Obviously, he was a sales agent, even if he was a five-use theory duty. The Insurance Procurement Act, or it was the Insurance Placement Liability Act, wiped out the law of five-use theories with respective brokers, so that shouldn't have been applied to him either. My time is up, and I ask that the appellate court's decision be reversed and the trial court's decision be reinstated. Thank you. Thank you. Ms. Matei. Good morning, Mayor and Chief of Court. My name is Kristen Matei, and I represent the appellees of the crops in this case. As the counsel pointed out, the main issue in this case involves when the crops' cause of action accrued. What the trial court determined is that it felt it was bound by the Hoover case and that a strict application of the statute of limitations was warranted, which was two years from the date that the contract was received by the crops. The appellate court took a different view, applied the discovery rule. I don't think that there is a serious dispute by anybody involved in this case or in all the cases that are cited in all the briefs that the statute issued, which is 214.4, that the discovery rule applies to that statute. There are cases going back for more than 10 years that apply the discovery rule to those cases in cases where there is a fiduciary relationship between the parties and in cases where there is not a fiduciary relationship between the parties. For example, in the Indiana insurance case, which is also discussed in a later case, it was clearly held that the discovery rule applies to suits brought against an insurance agent regardless of whether or not there is a fiduciary relationship. So the question really is then what constitutes discovery, right? So with your position, the statute could be told indefinitely until a claim is filed, right? Depending, I would say theoretically depending on the nature of the claim, I guess that could theoretically be possible. If there was a situation, and again, I think that the issue that wasn't addressed by appellate, which kind of bears on this, is the other issue which is that this is an insurance agent and not the company itself, and there were statements made by the agent to obfuscate the underlying defects in policy. And so, yes, there could be circumstances that could come up where based on the representations made by the agent, the situation could continue because I think that's the crux of our argument, is that this isn't something that was readily apparent to the client. So the discovery rule, you say the discovery rule applies. I mean, the discovery could be instead of the date the policy issued, maybe the policy wasn't presented for a year or something, wasn't mailed for a year. Something like that, or after two years, wasn't mailed, versus the fact that somebody files a claim 10 years after having this policy and not having read it, or 15 years, or 20 years, or 30 years, and so I had no idea that so it could, you're admitting, right, that theoretically it could go out 30, 40, 50, there's no end to it. Well, theoretically, I think the reason that there's many cases that address this issue and try to put a cap on it, which is the denial of coverage issue, that there's many cases, Broadnax, several others, that try to put a fixed point on it, which is when there's the denial of coverage as a point in an attempt to fix it. But in terms of, in the abstract, if it was true that we were talking simply about willful blindness and the insurers just simply didn't read the policy and then that was the issue, I think that, yes, it's possible it could go on in perpetuity, but then we'd have a different issue and different reasons why the discovery rule wouldn't apply. I mean, willful blindness, which is what counsel just referred to, the idea that the crops simply didn't want to or didn't read their policy, isn't the issue and isn't the reason why the discovery rule should apply. Do they have a duty to read their policy? They do have a duty to read their policy. And, in fact, if this were a suit directly against the insurance company for breach of contract, there might be circumstances where that failure to read the policy, based on the language, if they were asking to change or reform the language, was fatal or was a problem. But if you read the Perlman case and the Gulf v. Henderson case, a suit against the agent is different, and the lack of failure to read the policy in and of itself isn't fatal. And it's your position that there's a fiduciary relationship between that agent and the policyholder? The fiduciary relationship, as brought up by the appellate court, I will admit is difficult, because 2201 on the plain language of it. You want to go as far as saying wrong? I'll leave that to you. The 2201 on its face appears to severely limit the fiduciary relationship to whether somebody absconds with money or something like that. The appellate court doesn't, when it uses the fiduciary language, doesn't address 2201 and the interplay or relationship there. So I can't presume what they were thinking in that effect, but I would say that I don't think whether there is or is not a fiduciary relationship ultimately matters in the ultimate application of the discovery rule. You don't need to have a fiduciary relationship between the parties to apply the discovery rule. The Knox v. Silotek case says that. Again, the Indiana insurance case, which talks about the application of the discovery rule to a suit by an insurance company against its agent where there wasn't a fiduciary relationship, applied the discovery rule. So I think it's better to characterize what the appellate court was doing, is trying to explain that there is a duty, although 2201 may arguably have changed the nature of the duty from a true fiduciary relationship, but there still is a duty. I mean, 2201 goes out of its way to specifically say that. I'm trying to understand your argument, Ms. Mattei. You said that there is a duty to read the policy. The policy was issued in 2012. It was renewed in 2013, 14, and 15 without any saying to the insurance company or the agent, hey, this isn't what we bargained for here. And then in 2014, the son gets sued, and then there's discovery. So why is that different than the hypothetical I gave you that it could continue forever? Presumably, if the corrupt son wasn't sued until 2020, they would say that was the date of discovery. Because of the representations or arguably misrepresentations of the agent in this case. And that goes down to what used to be a fiduciary duty, but still is a duty that the agent has to procure the coverage requested. So the agent said it's the same as the other policy. They get the policy. And in the policy that you indicate they have to read, they find that it isn't the same. And they can extend their cause of action until there's a claim filed. But that would be presuming that they did find that this was like Hoover or like the newest case, the RVP case, where it's open and obvious. I think it's important to point out that those cases, which if you look at the whole trend of cases that are cited in the briefs that deal with the issue of failure to procure coverage, the two cases that don't apply the discovery rule, one that got all the way, I know the Indiana case, they didn't think they got to the merits of it. But the cases that do look at the merits and decide whether or not to apply the discovery rule, the cases that don't, like Hoover, say that it's so open and obvious on the merits, which they're basically limits. Saying that a layperson gets the policy, they get the declarations page, they look at it, you know what the value of your property is. And Hoover has to do with replacement value of property and whether or not it was 80%. And the case in there says it was the customer who was not the agent who was in the best position to get that deck page, look at the numbers, and say, hey, I don't have $200,000 worth of property, I have $500,000 worth of property. Or in the RVP case, where you know that your business isn't worth $75,000, if your deck page says that's what your coverage is, and you have a $1.5 million business. Doesn't it go back to what opposing counsel said, is that mutuality of contract and a contract analysis? The contract appears to be flawed from the beginning. Isn't that where the breach occurred? If the plaintiffs didn't get what they asked for, then it was flawed from the very beginning. There may have been a problem, but in terms of, it doesn't change when that problem occurred. But there was a problem, because if you say your client asked for certain things to be exactly the same as their traveler's insurance policy, and it wasn't that, then they didn't get what they asked for or bargained for. But the issue still goes, when did they know or should they have known that they didn't? But you said they had a duty to read it, and they would have known right away. I didn't say they would have known right away. I went to law school, and I have to look at the policies side by side. But they had a duty to look at it, and all they had to look at is their old traveler's insurance policy. But I think Lakeside is instructive on that issue. Where in that case, the potential policyholders gave a bunch of information to the agent and said, get us the appropriate policy. And in distinguishing that case from Hoover and applying the later statute of limitations, the court said, it's not like Hoover, where you're saying, we want to increase our limits. And they had it in their ability to look at the policy and see if those limits were increased. They asked for an overarching goal, and they relied on the advice of their agent that they were getting that. Because, again, that's what Lakeside said is, were the prompts supposed to go through the policy? Because it wasn't just a policy for instance. They just asked for the same thing, and there were three things. But they didn't just ask for that. They asked for a comparable policy. It's a homeowner's policy. It isn't just a policy that would apply to what the underlying suit was about. Is there a danger, counsel, that if we agree with your position, I mean, presumably, a policy that doesn't include defamation costs less than a policy that does. I mean, let's presume that. The more things that are added into the policy, the more it costs. So is there a danger that the savvy homeowner looks at the policy, has the duty to read it, says, oh, well, the agent screwed up. He doesn't have it in the policy. But we'll just pay this lesser premium. I think Mr. Swofford even mentioned that. We'll pay this lesser premium until we have a claim. Five years, 10 years, 20 years. We're saving $500 a year for the next 20 years. And then if we have a claim, we still have a cause of action because this court has said that the cause of action accrues when the claim is filed. But then I would argue that that goes to, that that's a question of fact, as to whether or not it was reasonable for the crops under the circumstances to have not been able to tell. Or I think it was even in one of the amicus briefs, too, speculating as to the crop's motive. I think that's illustrative of the fact that the parties, whether a party knew or should have known, is usually a question of fact and not determined as a matter of law. I think those circumstances are the safeguard against this circumstances where it goes on forever. Because ultimately the factual circumstances, I mean, again, if a party is willfully ignorant of something, if it really was they asked for a million dollars in coverage and they got $100,000 in coverage and they just put the policy in the drawer and willfully didn't look at it, then that's a different situation than here. But there has to be some protection. And again, this is a different situation than just a straight insurance company and the language of their contract versus its policyholders. There's this captive agent who, by nature of that relationship, has a financial incentive to sell these policies, saying to customers, yes, yes, yes, this is equivalent coverage. Rely on me. Trust me. I'm the one who's saying that this is equivalent coverage. So you're really saying he's a broker, right? Well, he's definitely a kind of scapegoat. The whole issue is the difference. And I know that the difference between broker and captive agent is, in various cases, not everyone is using those terms as consistently. But there's no doubt this person worked for American Family Insurance. There's no doubt he's a captive agent. There's no doubt. So in older case law, there is a difference between broker and agent. But in this case, he is, in fact, a captive agent. But as Skaffrodas said, he still has a duty to provide the coverage requested to the potential policyholders or tell them that he can't. And that's the duty that Varga had. He should have said to them, based on his knowledge and training, here's your policy, here's my policy, these are not equivalent for X, Y, and Z reasons. Instead of saying, here's an equivalent policy, and then saying, well, you know, there's differences. An occurrence is an ongoing thing. It's not an accident. Mental anguish is covered in one policy, but only if it results from direct bodily harm. It isn't just like we got a policy and it said, this one covers libel and slander and this one doesn't. I mean, there was homeowner's provisions. There was personal property provisions. There were all sorts of other provisions covered by these policies. Even if we agree with you, wouldn't there, by necessity, require a more fact-finding? This was decided on a 2619 motion, right? It was. And basically, that was the determination of the trial court, was that Hoover, in terms of the application of the strict two-year statute of limitations, was a matter of law. And I think that, yes, I think that that is incorrect because there are obviously underlying facts here that take this out of the purview of just a simple, on-its-face matter of law. They should have looked at their limits and known something was different. Thank you. In terms of the issues, unless anyone has any other questions, I think that pretty much covers what I want to say. And I would ask that the decision that you've helped fill be affirmed. Thank you. Thank you. Rebuttal? I really don't have any rebuttal. I thank the court. Could I ask a question, then? Could I ask you a question? This is, of course, not a breach of contract suit. This is a negligence suit, correct? I'm sorry? This is a negligence suit, correct? That's correct. It is not a breach of contract suit. Yes, that's correct. Okay, can you give me your best case that explains where a negligence action, in a negligence action, the duty, in a traditional negligence analysis, the duty is based on a contractual relationship. What case would tell us when that cause of action occurs, whether it's the breach of the contractual duty or an injury that occurs later, injuries and damages? I don't have my brief out there. I do have it. They're cited in the briefs. So you don't have any cases that can help me with that. I'm just thinking of traditional duty, breach, damages, or this would be causation and damages. And that's how we talk about negligence, okay? So your duty comes from the contract. Is it breach of that duty because of the document, what it says? And then where are the damages? Don't we usually look at that? All right. My best case. I don't know what my best case is. They're cited in my brief. They're cited in the amicus briefs. It was West American v. Sal Albianco talks about it. I'm sure that's one of the Supreme Court cases, 1977, Albianco 77, I think. Okay. Thank you. All right. And there's a number here. That's the lead case. Even some of the cases that rule otherwise on this issue say this is a rule. Del Bianco v. American voters. There's a lot of appellate court cases. That's the only Supreme Court case I have, though, I think. In my brief, anyway. American. Pardon? The case you just cited, West American, the action was not barred by the statute of limitations. Pardon? The case that you just cited, the West American Insurance Company, ultimately this court found that it was not barred by the statute of limitations. I haven't read the whole case, but it's kind of an interesting case that you cited. It's your best case. It's still held that the cause of action arose at Cruz at the time of the breach, nonetheless. Okay. Thank you. Are there any other questions? Anything else? Mr. Swafford? I don't believe so, Your Honor. Thank you. Thank you. Case number 122556, American Family Insurance v. Kropp, Varga, will be taken under advice for this agenda number 15. Mr. Swafford, Mr. Mattei, we thank you for your arguments today, your excuse for your thanks.